And on this matter, Moe v. GEICO Indemnity Company, case number 243271. Each side will have 15 minutes. And Mr. Buckley, if you would like to reserve time for rebuttal, please be aware that you're responsible for keeping track of that. But I do want to know if you are intending to reserve time. I would like to reserve five minutes, Your Honor. Five minutes, OK. OK, you may begin. May it please the Court, Dan Buckley on behalf of Brandon Moe, the named class representative and the putative class. This is our second visit to the court, as the court's aware. The first go around, this court remanded to the district court on the question of subject matter jurisdiction. GEICO, there's two GEICOs, GEICO Indemnity, which was the liability carrier. And government employees, also a GEICO company, was the adjusting company on behalf of GEICO Indemnity. So they're both, and I'll refer to them as GEICO collectively. GEICO removed this case after we filed the state court complaint alleging a putative class. There were no damages set forth in the complaint. That's not required in Montana. The removal papers were of concern to the Moe 1 court. I'll refer to the first decision as Moe 1, because it appeared that GEICO had swept in all Montana bodily injury claims and auto claims, every single one. And so the Moe 1 decision said, look, this is a narrowly defined class with limited damages to not only the named plaintiff, Brandon Moe, and actually said it looks like less than $1,000 to Mr. Moe. The class itself looked like it would be of limited damages. So Moe 1 remanded to the district court to have an evidentiary hearing in which the defendant, GEICO, would have the burden of proof by preponderance of the evidence under CAFA. Important to note that they only removed under CAFA. That's acknowledged. It's in the removal documents. So we went back down to district court. Before I get there on the evidence that was and was not submitted, just a quick overview what this case is about. Montana's Unfair Trade Practices Act governs and sets out the duties for insurance companies. There are no duties to claimants in Montana. And once a claim is made, that UTPA is triggered. And there's various duties. In 1999, there's a case called Ridley versus Guarantee. I think we're pretty familiar with Ridley.  So the- Counsel, let me just interrupt you and ask you, because you're going to be running short on time here. What were the assumptions that GEICO relied on to establish the $5 million amount in controversy? The assumptions were every single claim in Montana. Every single auto claim. Is that reasonable? No. Okay, why not?  So Ridley is a very distinct set of cases. And it primarily applies to unrepresented claimants, which is why we filed the case. If a case comes into my office or other practitioners in this area, we know what Ridley is. We know to say, hey, advance pay the medical bills, advance pay the wages. Liability is reasonably clear. Causation is reasonably clear. Claimants who are unrepresented don't know that. So GEICO instituted this business practice that says, unless they demand it, use the magic words, or a variety of it, we're just going to sit back. And we're not going to pay it. We're not going to advance pay it. And the reason that's harmful is because they can then leverage a full and final settlement. The poor claimant who can't pay their medical bills, who are suffering lost wages, especially where I live in Bozeman, where the cost of living is exorbitant, they need that wages. They need that advance payment. In your view, counsel, how should GEICO have determined which claimants were in the class? Well, we sent out discovery. We sent out numerosity discovery. Before summary judgment, the magistrate judge stayed any further ruling on, we were going to file. What's the temporal frame of your claim? So it'd be for first party claimants. So if I had a- No, no, time, time. What is the class timeframe? So it'd be eight years- Eight years. For first party claimants. Okay. And three years under Montana law for third party claimants. In the class- I might correct myself. It might be two years for third party claimants. If I'm not insured with GEICO, but the GEICO insured- So they need to, at a minimum, look, because of the longer period, the eight years. Yes. And within that eight year frame, is your claim for the delay in payment only as opposed to the payment? Well, so two answers to that, Judge. The delay in the payment could, depending on what the individual damages are, interest, like in our case, we had interest on the medical bills. For claimants that are still processing, we would say, pay the advance payments right now. So we could potentially have a number of claimants who are still litigating, well, processing their claim with GEICO. And if we got class certification, we'd send out a notice saying, if you still have an open claim, you are now obligated- Okay, but I think we're getting a little far afield from how do we get to the cap and number. Cap and number. I don't know how we get there, because- Well, there's gotta be a legitimate way for them in terms of what evidence they can propose. Yep, we sent out, there's form letters that our client got that said, hey, we're not a health insurance carrier. And so they said it to Mr. Moe's provider, go talk to your patient, okay? So we could see how many of those form letters they sent out. In today's world, with digital databases, it's easy enough, like in our claim file, we have notification of liability is reasonably clear, causation of injuries is reasonably clear, and medical bills and or wages have been received. You can easily do that with a digital search of the database. So you could find it, but they haven't done that. And we sent out numerosity discovery, and we've attached it to the briefs and the excerpts of record. And here's- Mr. Buckley, if I can just follow up on Judge McEwen's question, isn't it, in terms of the definition of the class, the size of the proposed class, the remand back from the Ninth Circuit here was to try to determine not only the monetary requirements under CAFLA, but as well as in terms of the size of the proposed class, correct? Correct. And as I understand it, the calculation- Judge Bennett, if I could just clarify, the specific was the amount of controversy. But the implication of the decision was to also numerosity. When it went down below, there was a report and recommendation from the magistrate judge, correct? To the district judge, is that correct? Recommendation. I mean, in terms of, I guess my question is, there appears to have been an assumption that every claimant to whom GEICO paid money during the class period was a potential class member. Right, which is just, I mean, it's just so outlandish. There's a number of reasons Ridley might not even be implicated. It could be big damages, low limits, they paid the limits. Your purported class then is essentially those with delayed payments. Not everyone is entitled under Ridley, correct? 100%, absolutely. So that's your class, is specifically those that have suffered a delay in payment? Yes. Okay, that's the class. As opposed to those to whom the Ridley payment was just made outright because the company determined that it was a legitimate claim under Ridley. Or the unrepresented claimant has an uncle who's a personal injury lawyer and said, you gotta demand it. Right. So that person's not a part of the class. Maybe GEICO paid out the full policy limits right away. That person's not a part of the class. Maybe the person went and saw a lawyer and they demanded it right away. That person's not a part of the class. So it has nothing to do with claims, total claims paid. If I understand then, one way to figure out who those people are is to see where those form letters are sent.  Yep, that's one way. But there was a number of form letters that we asked for in numerosity discovery. And their discovery responses say, it's unworkable. No objective way to determine. Liability isn't, we can't determine whether liability's reasonably clear. There's no, it would require an individualized inquiry. And then they say in their numerosity discovery, this is not susceptible to class treatment. And instead, they just use the total claims they've ever paid. Well, that seems to me to not go to removal, but to go to class certification. Well, when it's a part of the numerosity discovery and a part of the amount in the controversy discovery, it's their burden of proof to come forward with the evidence. Right, I understand. But what I'm saying is that, you know, you may or may not be able to certify a class given the vagaries of different claims. But in terms of the jurisdictional claim, they would at least need to document the number. Absolutely. They have to come forward with that. I do want to, I'm getting close to my reserve. The district court relied pretty much solely on one word in our complaint, programmatic. And the district court said, the complaint uses the word programmatic, so therefore, it must be all claims. But the complaint itself, that is talking about a business practice that is honed in on and focused in on the Ridley issue. So the fact that I used the word programmatic is only programmatic as to the claims handling processes we're talking about in the complaint. I'm under five minutes. I barely touched what I wanted to talk about, but I think we hit the primary points, so.  Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Kelly Dove, and I represent Guy Cohen, Guy Cohen Demnity. To start by addressing some of the court's questions, I do think there's an intertwined issue here about the class definition and the difficulty of searching for this information that fits the class as described. For example, in the reply brief, Mr. Moe states, a true calculation of GEICO's compensatory damage liability can only be determined through an analysis of the claims files. And that's because this class, where people may be entitled to Ridley payments, includes people who were paid Ridley payments, as Mr. Moe was, but on an allegedly delayed basis, or may have been entitled to Ridley payments but were not paid Ridley payments, or may have not requested Ridley payments, and they may not have requested Ridley payments because they did not want Ridley payments. Because as we discussed in our brief, it's a very common practice for people not to request Ridley payments because that interferes with their ability to receive health insurance payments and then auto insurance payments on top of those health insurance payments. So this is just an unworkable, there's no search for this because this is a fact-intensive inquiry where to discover if somebody might be entitled to Ridley payments and maybe was delayed in getting them, or maybe shouldn't have had to request them, but there's lots of people who don't even want to request them, that's not a metric where. Did you bring in a statistician or somebody to take a look at the documents? We, I don't think there was a case file by case file analysis, but we did have a declaration by Mr. Antonacci who works at GEICO who ran these searches on different metrics. But it seems to me the argument here is you have the whole banana. You basically have every bodily injury claim, which falls outside of, many of which might fall outside of this class or the claims. And then there's, so that's, you're taking the whole thing. And then you're also saying, and we can't go claim by claim because of all these complications. But there's a procedure in between there. I mean, CAFA doesn't require absolute mathematical precision. But it seems to me, and this is what I'm trying to understand, is by submitting every bodily injury claim, you've just gone too far. I mean, you've made a universe that is not the universe that intersects. If you imagine a Venn diagram, it doesn't intersect with the complaint. So isn't there a middle ground here that just hasn't been taken, a road not yet taken? Well, I think one way to take that road is to look at the data that we have pulled and that this is limited to, this is limited to bodily injury claims where there are going to be medical expenses. And while my friend here downplays the use of the word programmatic, I mean, it's used more than a dozen times in the complaint. There's a stress on the fact that this is alleged to have been a business practice. That's in the statute. So it's not an accident that it's being alleged to be a business practice. But if you take the numbers which have been scaled to more appropriately address the first versus third party claims to address the time period, paragraph 51 of the complaint requests disgorgement of payments and profits. And so if you take any of these numbers and even cut it down, for example, the disgorgement of payments and profits is $10.8 million. If you take just 10% of that, we're there with that plus the 4x multiplier that we get from King and where the district court started. If you take just 25% of two of the other starting point numbers, first party claims over eight years or third party claims over three years, any one of those gets to that number. So while the grand, and the briefing on appellant side really focuses on these raw data numbers that capture everything. But I think when you look at the fact that any one of them, if sliced and whittled way down, like I said, even 10% of the disgorgement number, 25%, I mean, there's many ways. I wanna say many ways to skin this cat and I realized that I was preparing for today. There has to be a better phrase. A better phrase for that. But there are many ways to skin this cat because these numbers are so large that you can take a very small percentage and still get to the CAFA number without going claim by claim. And to that point, you know, we also have the 4x multiplier, which for these damages amounts is established in King because a jury awarded a 9x and this court remitted it to a 4x. But if the damages amounts were lower, that multiplier could change. I mean, one of the reasons the King court remitted to a 4x multiplier was because of the size of the damages. And I don't wanna avoid this court's questions on the CAFA removal. Yeah, I mean, I think we have... To me, your answer doesn't quite get at the real problem here in terms of using this universe of all these bodily injury claims because it doesn't match what the complaint is about. And that's where I'm having some problem making that connection, just so you understand my question. Sure, and I think one response, and I'm happy to come back to CAFA, but it's also to pivot to just diversity jurisdiction here because that allows an alternate basis to look squarely at what's at issue. And here, Mr. Moe had asserted $1.1 million just on his own behalf. That's 100,000 in compensatory and a million in punitives. And he has now spent most of his reply brief and a good chunk of the opening brief walking back that number and saying that was bold and unrealistic. Mr. Dove did not, after the remand from this court back to the district court, essentially the plaintiff disavowed those figures, correct? He disavowed- In the amended complaint, basically he's seeking less than $50,000 combined in emotional distress and punitive damages, and so specifically states. Isn't that correct? The disavowal, which happened in 2024 post-remand, I think is legally ineffective under this court and Supreme Court jurisprudence. For example, under St. Paul Mercury and its progeny, a litigant cannot just amend its complaint to avoid federal jurisdiction past the removal period. That is good law that has been in place a long time under this court's decision in Singh. When there is a post-judgment question about jurisdiction, the court looks at the jurisdiction at the time of judgment. The removal was based upon CAFA, though, was it not? It was based on CAFA. It also listed diversity, but under Singh, the removal does not have to be on the basis of what you look at at judgment. What you look at at judgment is whether this court had jurisdiction at the time of judgment, and so even if the removal was federal question, but at the time of removal, there's diversity, the court will find removal, and that is both on the basis that, of course, subject matter jurisdiction has to exist, but the court, at the end of its decision in Singh, made clear that it disfavors the extreme waste that would occur if parties were allowed to just litigate all the way through the termination of a claim and then be able to just walk away from it. Now, of course, again, there needs to be subject matter jurisdiction, but it does not need to match the basis for removal. So our removal papers, to be technical, did list diversity, and it said, and CAFA. Clearly, our primary intent was CAFA, but there was garden variety diversity jurisdiction at the time of judgment. Counsel, is there any requirement, though, that GEICO say the $1.1 million that Mr. Moe was seeking was reasonable? I mean, people, plaintiffs often say, this is a $25 million case, which is absurd sometimes. That's correct, and the law does say if there's really no basis, no reasonable basis for the number, and it's true pie in the sky, then a plaintiff's assertion of its damages amount may not be able to carry the day. That's not so here, and I think for two reasons. Number one, I think the disavowal is legally ineffective because it's post-judgment, there's not one case that says you can disavow your damages amount on a post-judgment basis. Even if they don't disavow it, though, if it's unreasonable just on its face, do they also need to have disavowed it prior to anything? I mean, I see those as two separate. So I don't think they could have effectively disavowed it pre-judgment, and one reason is, here's why. Now that we're in this posture, they're like, oh, we weren't really trying to get any money at all, we had almost nothing. Those numbers were pie in the sky, but they weren't for two reasons. One is, those numbers are not pie in the sky when you look at what juries actually award in comparable verdicts, and one example is in the King case I just mentioned, because in that case, which was King v. Geico, which was a Montana case in which the district court used for its punitive damages multiplier, that case, the plaintiff was awarded for minimal economic damages $100,000 in compensatory damages under the UTPA, $100,000 in emotional distress damages, and $66,000 in attorney's fees, and then the jury award her a 9X multiplier, which this court remitted to four, but left those damages amounts alone. So the fact that the King plaintiff who had very similar claims, and this court found that the conduct of the defendant was not even so egregious as to warrant that multiplier, the King outcome represents that Mr. Moe's assertion of 100,000 in compensatory damages and one million in punitives is far from pie in the sky. It's reality, it was in King. And then while I think the disavowal of his damages is legally insignificant, I think it is telling that it isn't zero. And what he has here in his further excerpts of record at four on his disavowal is he claims $225 in interest on medical bills, $5,000 for harm to credit, $10,000 for mental and emotional distress, and punitive damages of 25,000. Now, of course, it's our position, this is not only ineffective but orchestrated, but notice he's claiming more than $15,000 just even in his disavowal. Even where he's saying, oh no, I don't really mean 1.1 million, he's still claiming a total of 40, 15 of which is compensatory. But then if you take the 4x multiplier from King, what this should really be is 60. And at this damages level, the multiplier might well be higher. And then you're right there with attorney's fees. So even his disavowal should be 60 using the 4x multiplier, which he never challenged. And really, it all should be more than that because this is all a fiction. But either way, his 100,000 plus 1 million in compensatory gets us there. It is absolutely grounded in reality, it's grounded in King. We were entitled to rely on it. It is sufficient to establish this court's subject matter jurisdiction under Singh and at the time of judgment. And if the court has concerns as a parent about how the numbers in the CAFA analysis work out, I think we absolutely get there with diversity jurisdiction. Well, I mean, if we disagreed with you on CAFA, which then also imposes a whole series of requirements once you remove under CAFA, then your argument is, so what? We're in federal court under diversity jurisdiction.  And the court below decided to adjudicate the individual claims before moving on to all of the issues with class certification and the class definition. So right now, what we have is a judgment granting a motion for summary judgment in our favor and against Mr. Moe on basically the merits of the individual claims. So we are just asking for that to be affirmed because the court never got to a class analysis and the court did have jurisdiction at the time judgment was entered in Geico and Geico indemnity's favor. I have a, I want to take you back to the CAFA analysis. What do you make of your friend on the other side talking about the form letters as a way to figure out a more accurate number for the class? I think it would still be vastly under inclusive because the form letters indicate a situation where there's been some reason for Geico to identify somebody who maybe is entitled to advance payments and communicate with them. And this has also been a poor vehicle for some of these questions because as our brief laid out, this case had a protracted history of Geico reaching out to Mr. Moe, Mr. Moe not communicating for 10 months, Mr. Moe hiring counsel, his counsel not communicating for six months. At one point Geico asked, do you want advance payments? By then it was 2017 and on top of that, Mr. Moe ratified Geico's conduct here because Geico said, okay we're gathering the rest of your medical documents and then we'll process your claim and he said great and that is a fact that is undisputed. So Mr. Moe actually ratified how Geico processed his claim here and only after the fact has brought this claim which for the reasons I was discussing earlier, I just think it's untenable in terms of identifying class members and that untenability and difficulty in itself is just something the district court had no cause to reach after granting summary judgment. I wanna ask you about Ridley now. When in your mind under Ridley, when are Geico's obligations triggered? Does an insured or a third party insured have to say I want my payments pursuant to Ridley or is it just as Mr. Moe did here, send you some bills? I think it's not a bright line but we definitely, our witnesses testified and it was unrebutted that we don't require any magic words. People don't have to say I want Ridley payments. It's enough to send a request for payments, ask for advance payments. Anything that communicates I wanna be paid these payments. There's no magic words, there's nothing. Didn't Mr. Moe do exactly that by having the physical therapist send the bills to Geico? No, we don't think so because he also submitted his medical insurance information which is often billed first for the reasons I was describing and so just because medical bills are sent directly to Geico does not trigger that because as I mentioned, a lot of people don't want Geico to pay their medical bills directly because it interferes with the working of their health insurance. What would trigger it? Just to say I want these bills paid, anything to that effect but just because Geico receives bills directly from the medical provider, that doesn't trigger it because there's still too much ambiguity about what that person wants to have happen with those bills. If Mr. Moe had sent the bills and said, please pay these Geico, that would have triggered it. We completely accept that, no magic words, nothing special. But that didn't happen here and when he did ask finally through counsel in 2017, Geico did almost immediately pay them. It was very quick at that point and until then, they had been playing a lot of phone tag and sending letters. So if they're sent by the medical providers directly, that doesn't trigger it? That's right and that is one reason they sent a letter to say, what would you like us to do here? We need more. So I know my time is up and thank you very much. Thank you, counsel. So I would like to address first the individual jurisdiction as the court recognized the initial preliminary statement of damages early on in the case. It was a bold, optimistic puffery, if you will, and I don't like standing here before the Ninth Circuit and saying that, but that's what it was. I once had- You would not be the only lawyer to commit that sin, Mr. Berkley. Right, yeah. So I think what's important is we then go through a couple of years of litigation, including two depositions of Mr. Moe, extensive written discovery and by the time GEICO moves for summary judgment on the underlying case, they take the position in their summary judgment brief after discovery, after depositions, that Mr. Moe had suffered no actual damages. They relied on that to get themselves out of the UTPA case, which requires, quote, actual damages. You know, the difficulty is that jurisdiction is established at the beginning of a case and so we have this odd situation where you make a pie-in-the-sky request for damages, but it seems to me that you can't then, like after the facts, say, well, now there's jurisdiction or not jurisdiction because really our damages are less. So the cases don't let you establish jurisdiction on a rolling basis. What's your response to that? I appreciate the court's comment. There are cases out there that say, you know, sometimes you bring a defendant in, a defendant goes out, a third party comes in, so cases do, you know, see flux as time goes on and there are cases that say, well, we lost jurisdiction, but then we had jurisdiction at the time of final judgment. So you can look at the time of final judgment. You can, but those are very different cases, the circumstances. So what's your best case for saying, after the fact, I can now submit a new declaration as to an amount less than $75,000 or jurisdiction? There's strong case law on that, including the Cohen decision right from this court a number of years ago. The cases that GEICO relies on is amendment of pleadings. So the plaintiff, some states require you to put in your statement of damages in your complaint. Montana doesn't require that. And then it gets bumped and then the plaintiff says, oh, wait a second, I'm gonna amend my pleading. That's not the case here. We have this bold, optimistic, puffery, sort of preliminary statement of damages. Then we have GEICO in the interim saying he has suffered no actual damages and has relied on that statement of fact to secure a summary judgment. Now, the district court didn't reach that because they said Ridley didn't apply under our theory. And so when we went back down to remand, I looked at the Cohen case, I looked at the other cases, including district court cases that we have cited that says a plaintiff may disavow and should disavow if the initial statement of damages is not valid, it's not reasonable, and it's not reasonable. And GEICO submitted that. Does that analysis include essentially the determination of the size of the proposed class once you've had some discovery, meaning that you really are focusing upon delay damages and Ridley damages in terms of those matters in which the liability was reasonably clear, which clearly doesn't include the people who ultimately did receive payment, but the liability was not initially reasonably clear, it seems to me. Right, right. I mean, you can have that situation. Liability's not reasonably clear. Causation, maybe there's pre-existing conditions. And maybe causation isn't clear, and so Ridley wouldn't apply. It is, as Moe One said, of narrowly defined class with limited damages. And so we modified our statement of damages and disavowed our preliminary. And we did this before Judge Morris ordered mediation, before he issued his decision on subject matter jurisdiction. And we filed our disavowment before mediation with Judge John, Magistrate Judge John Johnston, and it still didn't settle. So our individual damages are under $75,000. I, I. Counselor. My point is, follow up on Judge McEwen's question, is that analysis necessarily will have to ensue with respect to trying to define what the proposed class is in terms of exactly, through discovery, what is the proposed class? How many actually are claiming damages for delayed payment under Ridley? And some that, that's just not feasible. That there were clearly liability issues in question as it plays out. Right. And we don't know because we asked in discovery, and they're not giving us the answers. I'd like you to address your friend on the other side's discussion on the King case and why your, what, you know, your pie in the sky puffery is actually based in reality, where she mentioned that 1.1 million is not that far out of reach. Well, we have 200 and some odd dollars in interest that he lost because his medical bills were turned over. We have some lost wages of 200 and some dollars. We have emotional distress damages that I think we claimed like $10,000 in our disavowalment and restatement of the damages. I, you know, there's cases out there on both sides that would say a jury might award Mr. Mo a thousand bucks or 2,000 bucks, you know, but we have affirmatively stated, as we're allowed to, and as directed actually by the Ninth Circuit and other district court cases, to amend those damages, especially after discovery and depositions. I mean, we just realized we're not gonna get $1.1 million. That's just not gonna happen.  Counsel, you are well over your time. Could I make one comment? I'll give you 10 seconds. Okay. They're citing paragraph 51 of our complaint to say we're asking for disgorgement of premiums. That is absolutely incorrect. It's disgorgement of unpaid release for those claims that have not yet settled for the punitive, potential punitive class members. Okay, thank you, Counsel. Thank you. All right, thank you both. This matter is now submitted.
judges: McKEOWN, ALBA, Bennett